OPINION OF THE COURT
George Friedman, J.
In this proceeding brought pursuant to CPLR article 78, *738 petitioners seek to annul the determination of their landlord, the New York City Housing Authority (NYCHA), which placed them on conditional probation based on their failure to timely remit rental payments. Petitioners challenge this determination on the ground, inter alia, that their failure to pay rent was predicated on the existence of serious and substantial unsanitary conditions which plagued their apartment for a sustained period of time. They maintain, in essence, that they cannot be lawfully penalized for engaging in lawful behavior. This proceeding consequently raises a narrow yet fundamental issue of law: Does a residential tenant have a “right” to withhold rent where there exists a breach of the statutory warranty of habitability?
Facts
For approximately seven years prior to the events now at issue, petitioners paid their rent to the NYCHA in a timely manner. Commencing in January 1997, petitioners began to withhold rent due to a leak in a plumbing waste pipe. In March 1997, the petitioners commenced a proceeding in the Housing Part of the Civil Court of the City of New York, Bronx County. (HP action.) A court-ordered inspection conducted on March 18, 1997, disclosed the presence of a leaking waste pipe and an infestation of vermin. The HP action was resolved by NYCHA’s agreement to effectuate repairs.
Petitioners subsequently restored the HP action to the Trial Calendar, alleging respondent’s failure to remedy the condition. A second court-ordered inspection conducted on June 30, 1997, confirmed that the conditions persisted. Petitioners moved to hold NYCHA in contempt for its failure to remedy the conditions in the apartment. The HP action and a subsequent nonpayment proceeding brought by NYCHA were settled by a stipulation executed on August 4, 1997, (1) whereby NYCHA was granted a possessory judgment for an amount representing approximately 50% of the outstanding rental arrears, (2) petitioners received an abatement of approximately 50% of the outstanding rent, and (3) petitioners withdrew the motion for contempt. Petitioners paid the judgment amount in full.
Approximately three weeks later, petitioners restored the HP action to the Trial Calendar for the second time. A third court-ordered inspection was performed on September 24, 1997, and revealed that the plumbing was still not satisfactorily *739 repaired. In October 1997, NYCHA commenced a second nonpayment proceeding; this proceeding was eventually discontinued on February 9, 1998.
In January 1998, Housing Court Judge Howard Sherman personally inspected the premises. In a decision dated March 6, 1998, he found that the problem of leaks had been abated by replacing the existing pipe, but that a moisture problem still existed. A further order to effectuate repairs was made. In the ensuing months, petitioners continued to withhold rent, while a third nonpayment proceeding was brought by respondent. Housing Court Judge Sherman again personally inspected the premises in July 1998, and again found that further repairs were needed, although he could not determine whether the continuing condition resulted from a leaking pipe, or from condensation.
Subsequent to the filing of the instant petition, by decision and judgment dated November 9, 1998, Judge Sherman, after trial, awarded petitioners a 50% abatement, and granted respondent judgment for the balance. The judgment amount was paid in full on November 19, 1998.
Administrative Proceedings
While the foregoing matters were unfolding, on April 4, 1997, respondent NYCHA advised petitioners that unless all rental arrears were satisfied in full, respondent would seek to terminate petitioners’ tenancy based on “chronic rent delinquency.” Respondent’s regulations define “chronic rent delinquency” as “repeated failure or refusal of the tenant to pay rent when due.” On November 24, 1997, formal administrative charges were served on petitioners.
The administrative charges were prosecuted at a hearing at which petitioners were represented by counsel. Testimony was adduced that as of April 1998, petitioners owed six months’ rent in the amount of $2,956. The Hearing Officer curtailed petitioner’s attempts to testify concerning the nature, extent, and gravity of the condition of the apartment, because, in the opinion of the Hearing Officer, even assuming the presence of those conditions no basis existed for the withholding of rent. As the Hearing Officer stated on the record (transcript, at 118-119): “I am not disputing that there is some problem there. I have some doubts that the problem still exists, but the question that is of importance to this tribunal is the question of whether withholding rent is justified legally, and I say it is not. Therefore, I am entering a decision, based upon a *740 consideration of their complaint, of probation for one year, on condition that they pay their arrears, in full, whether satisfied or dissatisfied, by the end of August. Any other remedies that they seek by way of a declaration of breach of the warranty of habitability, by way of an abatement, those belong to Housing Court. Rent will have to be tendered by the end of August, and with that I — which I consider a mitigated sanction. I conclude this Hearing. I thank everybody for coming.”
Petitioners were adjudicated in violation of the regulations, and placed on probation, conditioned on their payment of all rent due without reduction. It is this determination which petitioners now challenge as arbitrary and capricious.
Discussion
At the outset, this court notes that no request is made by either side to transfer the proceeding to the Appellate Division pursuant to CPLR 7804 (g), on the ground that an issue of substantial evidence is presented. Nor does the petition raise an issue of substantial evidence'. The court concludes that the matter presents a justiciable controversy for determination in Supreme Court.
There is surprisingly scant authority squarely addressing the issue whether, under the proper circumstances, a tenant has a right to withhold rent. The Appellate Division appeared to so hold in Ansonia Assocs. v Ansonia Residents’ Assn. (78 AD2d 211, 220), when it stated that the injunctive relief granted in that action did not “deny any particular tenant his right to withhold rent for alleged breach of the warranty of habitability.” A few lower court decisions have explicitly recognized the right to withhold rent (see, e.g., Whitby Operating Corp. v Schleissner, 117 Misc 2d 794, 800 [Sup Ct, NY County 1982]; MRS Realty Co. v Higbee, 130 Misc 2d 763 [Sup Ct, NY County 1985]; 520 E. 86th St. v Leventritt, 127 Misc 2d 566 [Civ Ct, NY County 1985]). On the other hand, one Supreme Court Justice has specifically held, in denying an injunction against the NYCHA’s alleged policy of sanctioning tenants for failing to pay rent despite documented violations of the warranty of habitability, that Real Property Law § 235-b does not create a right to withhold rent. (Richburg v Franco, NYLJ, Sept. 24, 1997, at 26, col 4 [Sup Ct, NY County, Cahn, J.].)
According to the Richburg court, the tenant’s remedy under circumstances akin to those now presented is either to commence an action to compel repairs, or to commence a proceed *741 ing for an abatement. Richburg (supra) holds that the obligation to pay rent continues whether or not the tenant can establish the existence of breaches of the warranty of habitability.
The difficulty with the reasoning of the Richburg court is that its logical basis harkens to common-law times, when the tenant’s obligation to pay rent was entirely divorced from the landlord’s duty to maintain the premises. As is stated in one treatise: “At one time, a lease was deemed to be the functional equivalent of a conveyance of land rather than a contract, so that the obligation of the tenant to pay rent was independent of the obligation, if any, of the landlord to maintain the premises in tenantable condition. This meant that, absent adverse conditions sufficiently severe as to constitute an actual or constructive eviction, the tenant was limited to whatever remedies were contained in the lease. As a result, such tenants generally could not use the withholding of rent as a weapon to compel the landlord to maintain building services. Although the law has changed little with respect to commercial tenants, the law has changed dramatically with respect to residential tenants. A residential lease is now, to a large extent, deemed to constitute a sale of shelter and services and contains an implied warranty of habitability.” (7 Warren’s Weed, New York Real Property, Leasing: Rights & Obligations, § 6.03 [3] [a] [4th ed].)
If this court were to follow the logic of Richburg (supra), it would hold, in essence, that the obligation to pay rent is independent of the landlord’s obligation to maintain the premises. The statutory warranty of habitability, however, makes those obligations mutual and interdependent.
While appellate decisions have not explicitly recognized a “right” to withhold rent in so many words, the courts have from the inception countenanced the procedure whereby a tenant who withholds rent may counterclaim for breach of Real Property Law § 235-b and be granted relief in the form of a set-off in a summary nonpayment proceeding (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, cert denied 444 US 992 [1979]). The obligation to pay rent clearly can no longer be perceived as an entirely independent obligation which continues irrespective of the conditions existing in the demised premises. “The warranty of habitability, set forth in Real Property Law § 235-b, is a fundamental feature of the lease of residential property, and assures that the duty to maintain the premises in a habitable *742 condition is coextensive and interdependent with the duty to pay rent.” (Fourth Fed. Sav. Bank v 32-22 Owners Corp., 236 AD2d 300, 301 [1st Dept 1997].)
The concept that the residential tenant, clearly the less sophisticated party in the vast majority of cases, is obligated to commence an affirmative action or proceeding to secure his or her rights under Real Property Law § 235-b, does not comport with the modern prevailing concept that the obligation to pay rent is dependent on the landlord’s obligation to maintain the premises. So, too, the notion that a tenant may be penalized during the pendency of proceedings which are brought by the tenant to enforce housing standards, or brought by way of counterclaim for an abatement for breach of the warranty of habitability, strikes this court as illogical and arbitrary.
To the extent that the respondent asserts any prejudice arising from the failure to pay rent during the pendency of proceedings in Housing Court, respondent had recourse to the court to compel the payment of rent during the pendency of Civil Court proceedings (see, e.g., RPAPL 745 [2]).
Conclusion
The standard applied by the NYCHA, that the withholding of rent cannot under any circumstances be justified, is arbitrary and capricious. Whether or not the withholding of rent is justified in a particular case will depend on the totality of the circumstances involved. It may be the case that a minor disrepair will not justify withholding of rent, or that the failure of the tenant to seek redress other than the withholding of rent is unreasonable under a particular set of facts. In the present instance, however, where tenant commenced an HP action and pursued redress, the imposition of a penalty for the withholding of rent cannot be based upon a blanket rule barring withholding of rent; the agency must examine whether the withholding was authorized under the particular facts presented. Indeed, to the layperson, the NYCHA’s pursuit of administrative sanctions against the petitioner during the pendency of these proceedings may appear to be no less than retaliatory, although the court notes that there is no evidence that respondent’s motivation was in any way inappropriate.
This court need not and should not decide which factors among myriad circumstances will warrant the withholding of rent. It suffices to hold, at this juncture, that such withholding is authorized under appropriate circumstances, and to remand *743 the matter to the agency for further determinations. Nor need the court determine whether petitioners were denied due process.